SHORTESS, Judge,
dissenting.
I agree with the majority’s holding that the jury manifestly erred in finding that Dunn’s conduct was not substandard. I disagree with that part of the opinion which holds that the self-inflicted gunshot wound was an “intervening cause.” The majority distinguishes Argus v. Scheppegrell, 472 So.2d 573 (La.1985), reasoning that the substandard conduct of prescribing quantities of amphetamines and barbi-tuates to an 18-year-old addict in that case was more directly connected to the self-inflicted injury (i.e., taking the pills). This reasoning greatly oversimplifies the complex issue of causation in a medical malpractice case such as this one and disregards the proposition of Argus that “[t]he patient’s conduct cannot be, at the same time, both the foreseen risk which imposes the duty on the physician and the defense which totally excuses the physician’s' breach of that duty.” Argus, 472 So.2d at 574.
Dunn’s duty to Tabor arose because Tabor’s physical condition (under the influence of an unknown quantity of unknown drugs) and mental condition (depression) created a risk of suicide. Dunn testified that depression coupled with drugs create the risk. He determined Tabor had not attempted suicide after questioning Tabor *852 and his parents as to whether the overdose was intentional. Tabor left the emergency room that morning, however, with no change in the diagnosis (depression and drug ingestion), and Dunn’s own testimony leads to the unavoidable conclusion that the risk prospectively had not dissipated merely upon the conclusion that the overdose itself was unintentional {i.e., drugs and depression create the risk).
Now the question becomes foreseeability, and the issues of causation and duty (with undercurrent considerations of delictual policy) merge inextricably. See Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1157 (La.1988) (“each person owes a duty to take reasonable care to avoid acts or omissions which he can reasonably foresee would be likely to injure ... unless there is some justification or valid explanation for its exclusion). Pitre tells us that in medical malpractice cases the same “criteria of foreseeability and risk of harm” (i.e., duty/breach) which determine negligence should also determine the extent of liability for that negligence (i.e., causation). Pitre, 530 So.2d at 1161. Even more hybrid, Argus tells us, is the case before us, because a duty which arises because a patient’s conduct is a foreseen risk is not absolved by the occurrence of the foreseen conduct.
The jury instructions on causation mentioned neither the Pitre nor the Argus rules of law. An instruction based on Hastings v. Baton Rouge General, 498 So.2d 713, 720 (La.1986) (“whether the malpractice contributed to the death, i.e., lessened the chance of survival_”), was also denied. While improper jury instruction has not been specified as error, an adequate review of the findings of fact where, as here, the issues of causation and negligence are inseparably fact and law, must consider the law given the jury. The majority simply defers to the jury’s finding of no causation.[1] I have great difficulty simply deferring to a finding of fact such as this one which is based on inadequate, inaccurate instructions of law.
Dunn foresaw suicide as a potential risk. He prescribed hospitalization and then, with no change in factors other than ability to pay, changed the prescription. This was not negligence per se; however, Dunn told the Tabors that methaqualone was “safe” (without knowing methaqualone was in fact the drug taken) compared to other drugs and that it had a “short life” (without determining the exact dosage). The record reveals these instructions to be inaccurate.[2] Moreover, the medical testimony was consistent as to the difficulty of determining whether a person is suicidal. The Tabors were not told what behavior should be considered a warning. Cenac testified that the medical review panel concluded Dunn’s instructions “needed work.” I agree and believe the record supports the conclusion that had appropriate instructions been given, Tabor’s chance of survival would have been increased significantly. Failure to properly instruct was a breach of the standard of care and a legal cause of the subsequent conduct which resulted in Tabor’s suicide.
I respectfully dissent.

. The jury answered the causation interrogatory despite verdict form instructions not to answer the causation question if the negligence question was answered negatively.

. Methaqualone’s effects include "highs” and “lows” exaggerated by dosage and can remain in the body for as long as forty hours.